# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:20-CR-65 |
| | ) | JUDGE GREER |
| EMORY Q. JACKSON | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

Comes now the United States of America, by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and responds to the Defendant's motion to suppress the evidence obtained from the August 7, 2020, traffic stop and search of the vehicle, as well as all evidence and statements obtained thereafter, filed as Documents 21 and 22 in this case. The United States respectfully requests that Defendant's motion to suppress be denied and states the following in support thereof:

## FACTS

On August 7, 2020, Investigator Jeff Legault with the Johnson City Police Department stopped a white Ford truck as it was driving past 136 Princeton Road. The Defendant, Emory Q. Jackson, was in the passenger seat of the vehicle and Investigator Legault had knowledge that the Defendant had an outstanding warrant for his arrest for shoplifting and criminal trespass. Investigator Legault made contact with the driver of the vehicle, who stated she was going to get tires for her vehicle.  Investigator Legault had the driver exit the vehicle and asked for consent to search her vehicle. The driver gave Investigator Legault permission to search the vehicle.

While searching the vehicle, Investigator Legault had the Defendant step out of the vehicle and patted him down for officer safety. Nothing was located. Investigator Legault then searched the truck and located an RG revolver in the center console that had two rounds of ammo and one spent casing in it. Investigator Legault asked the driver about the gun and she stated that it was not hers. The driver's criminal history was pulled and it was determined that she was not a convicted felon. She advised Investigator Legault that she when she picked up the Defendant, he had pulled the firearm out of his back pocket, and then placed it in the center console while he was in the vehicle.

The Defendant's criminal history was pulled and it was confirmed that he is a convicted felon, with a previous conviction for felony failure to appear out of Washington County, Tennessee, case number 2018-CR-43922. The Defendant was subsequently placed under arrest and transported to headquarters to be interviewed. He was advised of his rights, and gave a statement to officers. The Defendant denied owning the revolver, but stated that he knew the firearm was in the vehicle.

## ARGUMENT

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. It is well settled that a roadside traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A traffic stop is characterized as an investigative detention, rather than a custodial arrest. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). As such, a traffic stop is governed by the principles of *Terry v. Ohio*, 392 U.S. 1 (1968). The *Terry* standard is a two-tiered reasonable suspicion inquiry: 1) whether the officer's action was justified at its inception, and 2) whether the search or seizure was reasonably

related in scope to the circumstances that justified the stop in the first place. *Terry*, 392 U.S. at 19-20.

Reasonable suspicion to conduct a traffic stop may be based on the collective knowledge of officers involved in an investigation. *See United States v. Hensley*, 469 U.S. 221, 232 (1985) (approving reasonable suspicion stop based on police flyer from another police department); *see United States v. Laughman*, 618 F.2d 1067, 1072 (4th Cir.), cert. denied, 447 U.S. 925 (1980) ("[S]o long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts").

The existence of an arrest warrant provides probable cause to arrest and such arrest does not violate the Fourth Amendment. An arrest pursuant to a warrant is presumed reasonable because the warrant may only be issued upon a showing of probable cause. *Franks v. Delaware*, 438 U.S. 154, 171, (1978). As stated above, Investigator Legault clearly observed the Defendant in passenger seat of the vehicle. He recognized the Defendant and had knowledge that the Defendant had an outstanding warrant for his arrest. Investigator Legault initiated a traffic stop in order to arrest the Defendant on his outstanding warrant. It is unclear to what exactly the Defendant objects to, given that the active warrant provides clear probable cause for the traffic stop and subsequent arrest.

The Defendant states "An alternate description of the stop is contained within the Washington County General Sessions Court Affidavit of Complaint attached hereto as 'Exhibit A.'" (Doc 21). The Defendant goes on to allege that "Said vehicle stop was warrantless, completely without probable cause or reasonable suspicion, and lasted for an unconstitutionally long duration." The Court Affidavit cited by the Defendant was written by Investigator Legault, and

states "On listed date I stopped a white Ford truck that as it was driving passed had suspect 1 in the passenger seat. Writer had knowledge that suspect 1 had a warrant for his arrest so I stopped the vehicle." (Doc. 21). Furthermore, Investigator Legault can testify to the fact that the stop and arrest of the Defendant took approximately twenty minutes total, which given the facts, is clearly not an unconstitutionally long duration.

The Defendant's objections to the search of the vehicle are without merit as well, as he does not have standing to challenge the search. The mere fact that a person is present at the scene where a search and seizure occurs is insufficient, standing alone, to confer standing on that person to contest the lawfulness of the search. *Rakas v. Illinois*, 439 U.S. 128 (1978); *Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998). "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable..." *Carter*, 525 U.S. at 88, 119 S. Ct. at 472; see also *United States v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999) (although the defendant was driving the informant's van, he lacked a reasonable expectation of privacy in it).

The Defendant does not acquire a Fourth Amendment interest in the car merely because the government will seek to introduce at trial incriminating evidence seized from the car. *Rakas*, 439 U.S. at 134, ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."); see also *Chaves*, 169 F.3d at 690 (claiming ownership of contraband in a car does not give the defendant an expectation of privacy in the car).

The present case involves the stop and search of a vehicle in which the Defendant was a passenger. "[A] passenger [ ] in a private car,... who has no possessory interest in the automobile,

does not have a legitimate expectation of privacy in the interior of the automobile because he does not have the right to exclude others from the car." *United States v. Lee*, 586 F.3d 859, 864 (11th Cir. 2009). (citing *Rakas v. Illinois*, 439 U.S. 128, 140, 143 n.12 (1978)). Courts have continued to hold that passengers of a vehicle do not have standing to challenge the search of a vehicle when the driver gives consent, even when they may challenge the legality of the traffic stop itself. *Brendlin v. California*, 551 U.S. 249 (2007).

> However, this conclusion did not alter its earlier opinion in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), that a passenger has no standing to object to a search of a vehicle over which he has no possessory or ownership interest. *United States v. Ubaldo–Viezca*, No. 09–16341, 2010 WL 3895710, at *5 (11th Cir. Oct.6, 2010); see *United States v. Villaverde–Leyva*, No. 1:10–035, 2010 WL 5579825, at *15 (N.D.Ga. Dec.9, 2010) (collecting cases indicating that majority of courts have concluded that *Brendlin* does not modify *Rakas* as it relates to a passenger's standing to contest the search of another's vehicle). Since Ms. Coons's consent related to the search of her vehicle, it would not appear that Defendant has standing to challenge the voluntariness of that consent. *See United States v. $14,000 in U.S. Currency*, No. 98–4380, 2000 WL 222587, at *3 n. 4 (6th Cir.2000) (a passenger does not have standing to contest the voluntariness of a driver's consent to search an automobile); *United States v. Saenz*, No. 99–20276, 2000 WL 33725117 at *7 (W.D.Tenn. Mar.22, 2000) (same).

*United States v. McColley*, No. 3:09–00193, 2011 WL 253166, at *6-7 (M.D.Tenn. January 25, 2011).

The court in *U.S. v. McColley* went on to point out that the Sixth Circuit held in United States v. Ellis that passengers do not have an expectation of privacy in a vehicle. *Id.* "Although a passenger does not have a legitimate expectation of privacy in the searched vehicle, 'as a passenger [a defendant] may still challenge the stop and detention and argue that the evidence should be suppressed as fruits of illegal activity.'" *United States v. Ellis*, 497 F.3d 606, 613–14 (6th Cir.2007) (citing *United States v. Jones*, 374 F.Supp.2d 143, 154 (D.D.C.2005) (quoting *United States v. Ameling*, 328 F.3d 443, 447 n. 3 (8th Cir.2003)) (internal quotation marks omitted).

The Defendant also objects to admitting any statements he made to Investigator Legault at the time of the traffic stop. In *Miranda v. Arizona*, the Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits the admission of statements given by a suspect during "custodial interrogation" without a prior warning. *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* warnings must be given only when two prongs are met: (1) a suspect is in custody, and; (2) the suspect is subject to government interrogation. *See Illinois v. Perkins*, 496 U.S. 292, 297 (1990). The Supreme Court has defined "interrogation" as "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980); *Miranda,* supra at 444.

However, *Miranda* warnings are generally not required for questioning at routine traffic stops. *Berkemer v. McCarty*, 468 U.S. 420 (1984). Traffic stops are akin to *Terry* stops, where no *Miranda* reading is required, rather than a formal interrogation where such warnings are necessary. *Id.* at 439. During a traffic stop, an officer may ask the detainee a moderate number of questions to determine his identity and to confirm or dispel an officer's suspicions. *Id.* Persons detained in traffic stops are not "in custody" for the purposes of *Miranda*. *Id.* However, once a motorist who has been detained pursuant to a traffic stop is thereafter subjected to treatment that renders him or

her "in custody" for practical purposes, the motorist is then entitled to the full array of protections afforded a suspect by *Miranda*. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

In the present case, Investigator Legault stopped the vehicle because the Defendant had active arrest warrants, and asked the Defendant to step out of the car. While he was waiting by the side of the vehicle during the search, Investigator Legault briefly asked if he had knowledge of the firearm in the center console of the car, to which the Defendant admitted that he did. The Defendant was not under arrest when Investigator Legault asked him about the gun, but detained in a traffic stop. The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views of the person being interviewed. *Berkemer* at 442; *Stansbury v. California*, 511 U.S. 318, 323 (1994).

Once the Defendant was formerly placed under arrest and transported to police headquarters, he was read his *Miranda* rights and then willingly gave an additional statement, where he again admitted that he had knowledge of the gun in the vehicle, but denied that it was his firearm. There is no indication that at that point the Defendant did not fully understand his rights, and his objection to the admission of his statements is baseless.

## CONCLUSION

Based upon the foregoing, the Defendant's argument that the traffic stop and subsequent obtainment of evidence were unconstitutional is without merit. Therefore, the United States respectfully requests that the Defendant's motion to suppress be denied.

Respectfully submitted this the 6th day of October, 2020.

J. DOUGLAS OVERBEY

United States Attorney

By:   s/ ***KATERI L. DAHL***

KATERI L. DAHL
Special Assistant U.S. Attorney
DC BAR: 888241224
220 West Depot Street, Ste. 423
Greeneville, TN  37743
kat.dahl@usdoj.gov
(423) 639-6759

# CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October, 2020, a true and accurate copy of the foregoing Response was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States mail. Parties may access this filing through the Court's electronic filing system.

s/ ***KATERI L. DAHL***

KATERI L. DAHL
Special Assistant U.S. Attorney
DC BAR: 888241224
220 West Depot Street, Ste. 423
Greeneville, TN 37743
kat.dahl@usdoj.gov
(423) 639-6759